IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GLOBE IMPORTS LIMITED, INC.,
GLOBE PROPERTIES, and ROBERT
MAXON,

        Plaintiffs,

    v.

ALLIED PROPERTY AND CASUALTY
INSURANCE CO. and NATIONWIDE
INSURANCE,

        Defendants.

_____/

No. C 14-3676 CW

FINDINGS OF FACT
AND CONCLUSIONS OF
LAW AFTER BENCH
TRIAL

A fire damaged two buildings and destroyed a third.  All three buildings are owned by Plaintiff Globe Imports Limited, a division of which is Plaintiff Globe Properties.  Docket No. 63, Joint Pretrial Conference Statement (JPCS) at 1.[1]  At the time, Plaintiffs held a commercial property insurance policy with Defendant Nationwide Mutual Insurance Company.[2]  The parties dispute coverage for many of the costs related to repair and replacement of these buildings.

For the bench trial in this matter, the Court instructed the parties to offer their direct testimony through the designation of declarations and deposition transcripts.  The parties have filed trial briefs with these declarations, deposition transcripts and

---

[1] All citations to the JPCS are to undisputed facts.

[2] Claims against the other named defendant, Allied Property and Casualty Insurance Company, were dismissed by stipulation. Docket No. 32.

**United States District Court**
For the Northern District of California

documentary evidence and also include citations to the material that they submitted previously with the earlier motions.  The parties were given the opportunity to cross-examine witnesses during the bench trial.  The parties also filed post-trial briefs and written closing arguments.

Nationwide objects to some of the evidence submitted by Globe.  The Court has reviewed these evidentiary objections and has not relied on any inadmissible evidence.  The Court will not discuss each objection individually.  To the extent that the Court has relied on evidence to which one side has objected, such evidence has been found admissible and the objections are overruled.

The Court now enters its findings of fact and conclusions of law.

BACKGROUND FINDINGS OF FACT

On December 8, 2006, a fire in Eureka, California damaged two buildings and destroyed a third building owned by Globe.  JPCS at 1.  One of the damaged buildings, Building 1, was located at 527, 531 and 535 Third Street.  Id. at 2.  The other damaged building, Building 3, was located at 526 Opera Alley.  Id.  Building 2, the destroyed building, was located at 224, 226 and 236 G. Street.  Id.

I.   Buildings

Building 2 comprised a first floor used as a meat market, a second floor originally used as a dance hall with a sprung dance floor and a mezzanine area above the second floor.  Docket No. 68, Maxon Dec. in Opp. ¶ 6; Transcript at 27:17-28:4.  The stairway leading to the second floor had two landings.  Maxon Dec. in Opp.

¶ 7.  It was lined with ornate wainscot and heavy trims and finishes.  Id.  Heavy trim and wainscot were also prevalent at the top of the stairway, in the foyer and in adjacent dressing rooms with showers and bathrooms.  Id. ¶¶ 7-8.  The foyer opened into the dance hall, which was 3,516 square feet.  Id. ¶ 9.  The dance hall was surrounded by ornate framed plaster arches, wainscot, heavy trim and ornate plaster walls with large double hung windows.  Id.; see also Ex. 56 at 7, 11.  Three staircases led up to the mezzanine level, which comprised a balcony to observe the dance floor.  Maxon Dec. in Opp. ¶ 10; see also Ex. 56 at 6. Building 2 was constructed using substantial amounts of old growth redwood.  Docket No. 59, Penfold Dec. ¶ 9.

Repairs have been performed on Buildings 1 and 3, but Building 2's reconstruction has not yet begun.  A "different building" is going to take the place of Building 2.  Transcript at 27:12-14.  Instead of two stories and a mezzanine, there will be three stories.  Id. at 27:15-28:16.  The new building will differ from the old in other ways.  It will use drywall instead of lath and plaster.  Id. at 29:1-3.  Further, it will use a concrete mat slab, which means there will not be any redwood base beneath it, id. at 29:4-16, and there will be no redwood sheathing on the inside of the exterior or interior walls, Depo. Desig., Ex. A at 113:15-20.  The new building will also have steel framing, which Building 2 did not have.  Id. at 112:23-25, 113:22-25.  Using the steel will "deliver the same sense of quality, the esthetics, sound deadening, all those things."  Id. at 114:5-7.

//

//

## II.   Contract

Nationwide and Globe entered into a commercial property insurance contract for the period January 1, 2006 to January 1, 2007.  JPCS at 2.  Under the Commercial Property Statement of Values, the contract contains a blanketed $4,501,700 limit.  Id. Buildings 1 and 2 together are assigned a $1,775,300 value. Building 3 is assigned a $98,200 value.  Id.  The general coverage provisions are as follows:

> A. Coverage
> We [Nationwide] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
> 1. Covered Property
> Covered Property, as used in this Coverage Part, means the type of property described in this Section A.1., and limited in A.2., Property Not Covered, if a Limit of Insurance is shown in the declarations for that type of property.
> a. Building, meaning the building or structure described in the Declarations . . .
> . . .
> 2. Property Not Covered
> Covered Property does not include:
> . . .
> d. [W]alks, patios or other paved surfaces;
> . . .
> f. The cost of excavations, grading, backfilling or filling;
> g. Foundations of buildings, structures, machinery or boilers if their foundations are below:
> 1) The lowest basement floor; or
> 2) The surface of the ground, if there is no basement;
> h. Land (including the land on which the property is located)
> . . .
> m. Underground pipes, flues or drains;
> . . .

Id. at 2-3.  The contract provides that Nationwide "will determine the value of the Covered Property in the event of loss or damage" at "actual cash value." JPCS at 3.  "Actual Cash Value" is defined as follows:

4

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of the like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether the property has sustained partial or total loss or damage.

Globe purchased optional replacement cost coverage under the insurance contract. Id. at 2. The contract states:

G. Optional Coverages
  If shown as applicable in the Declarations, the following
  Optional Coverages apply separately to each item.
  . . .
  3. Replacement Cost
     a. Replacement Cost (without deduction for depreciation)
        replaces Actual Cash Value in the Loss Condition,
        Valuation, of this Coverage Form.
  . . .
     d. We will not pay on a replacement cost basis for any loss
        or damage:
        (1)  Until the lost or damaged property is actually
             repaired or replaced; and
        (2)  Unless the repairs or replacement are made as soon
             as reasonably possible after the loss or damage.
        With respect to tenants' improvements and betterments,
        the following also apply:
        . . .
        (4)  We will not pay for loss or damage to tenants'
             improvements and betterments if others pay for
             repairs or replacement.
     e. We will not pay more for loss or damage on a replacement
        cost basis than the least of (1), (2) or (3), subject to
        f. below:
        (1)  The Limit of Insurance Applicable to the lost or
             damaged property;
        (2)  The cost to replace the lost or damaged property
             with other property:
             a. Of comparable material and quality; and
             b. Used for the same purpose; or
        (3)  The amount actually spent that is necessary to
             repair or replace the lost or damaged property.
     f. The cost to repair or replacement does not include the
        increased cost attributable to enforcement of any
        ordinance or law regulating the construction, use or
        repair of any property.

Id. at 3-4.

The contract includes coverage for increased costs of construction in the Additional Coverages provisions:

e. Increased Cost of Construction
   (1)     This Additional Coverage applies only to buildings
           to which the Replacement Cost Optional Coverage applies.
   (2)     In the event of damage by a Covered Cause of Loss
           to a building that is Covered Property, we will pay the
           increased cost incurred to comply with enforcement of an
           ordinance or law in the course of repair, rebuilding or
           replacement of damaged parts of that property, subject
           to the limitations stated in e.(3) through e.(9) of this
           Additional Coverage.
   (3)     The ordinance or law referred to in e.(2) of this
           Additional Coverage is an ordinance or law that
           regulates the construction or repair of buildings or
           establishes zoning or land use requirements at the
           described premises, and is in force at the time of loss.
           . . .
   (6)     . . . If a damaged building is covered under a
           blanket Limit of Insurance which applies to more than
           one building or item of property, . . . the most we
           will pay under this Additional Coverage, for the
           damaged building, is the lesser of $10,000 or 5%
           times the value of the damaged building as of the
           time of loss times the applicable coinsurance
           percentage.
           This amount payable under this Additional Coverage is
           additional insurance.
   (7)     With respect to this additional coverage;
           (a)     We will not pay for the Increased Cost of
                   Construction:
                   i. Until the property is actually repaired or
                      replaced, at the same or another premises; and
                   ii.     Unless the repairs or replacement are
                           made as soon as reasonably possible after the
                           loss or damage, not to exceed two years.  We
                           may extend this period in writing during the
                           two years.
                           . . .
   (8)     This Additional Coverage is not subject to the terms
           of the Ordinance or Law Exclusion, to the extent that
           such Exclusion would conflict with the provisions of
           this Additional Coverage.

Id. at 5-6.

To date, Nationwide has paid $1,609,242 toward repairing

Buildings 1 and 3 and for the actual cash value of Building 2.

Id. at 6.  Nationwide paid Globe an additional $93,347 for

demolition, debris removal, fencing and security, bringing the

total payment to $1,702,589.  Id.  It held back $92,035 from its

United States District Court
For the Northern District of California

payment to Globe pursuant to contract provisions that require actual replacement of the building.  Id.

## STANDARD OF REVIEW AND CONCLUSIONS OF LAW

"The burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage." Aydin Corp. v. First State Ins. Co., 18 Cal. 4th 1183, 1188 (1998).  However, an insurer bears the burden of showing that a policy exception or exclusion applies.  See, e.g., Clemmer v. Hartford Ins. Co., 22 Cal. 3d 865, 880 (1978) (stating that the "burden of bringing itself within any exculpatory clause contained in the policy is on the insurer"); Prichard v. Liberty Mut. Ins. Co., 84 Cal. App. 4th 890, 910 (2000) ("The insurer has the burden of establishing the applicability of an exclusion.").

"Replacement cost is the estimated cost to construct, at current prices, a building with utility equivalent to the building being appraised, using modern materials and current standards, design, and layout." Fire Ins. Exchange v. Super. Ct., 116 Cal. App. 4th 446, 468 (2004).

## FINDINGS OF FACT

The parties dispute several costs related to each of the three buildings.

I.   Building 1

On December 10, 2007, Globe submitted to Nationwide a claim for $373,928 for repairs it had completed on Building 1.  Ex. 1. The parties agree that $35,497 of the $373,928 was not covered under the Contract.  Globe also claims that it is owed $86,690 for Robert Maxon's work as a Project Manager.  The Court discusses

United States District Court
For the Northern District of California

each disputed cost enumerated in the parties' Disputed Items Chart (Chart) below.  Docket No. 102.

      a. Gas Relocation Service

Globe submitted for reimbursement a cost of $2,824 for "GAS SERVICE RELOCATION/REARRANGEMENT COSTS."  Ex. 1 at 3.  Pacific Gas & Electric's invoice for this service was dated May 11, 2007.  Id. The Court finds that this service relates to Unit 535, within Building 1, which had gas lines in it before the fire.  Ex. 1 at 64; Transcript at 364:12-16.  The fire destroyed that gas line. Id. at 365:3-12.  Although Nationwide argues that this cost related to adding a gas line to a different unit, the Court finds Globe's evidence and testimony more clear and credible.

The Court finds that Globe is entitled to the cost of the gas relocation service because the loss of gas to Unit 535 was caused by the fire.  See JPCS at 2.

      b. Gas Line Installation

Globe had a gas line installed that serviced Building 1 and Building 3.  The installation cost $5,666; that cost is divided in half between the two buildings.  See Ex. 1 at 79.  The work associated with this cost was two-thirds trenching and one-third gas piping installation.  Transcript at 13:6-14:6; Ex. 1 at 80-82.

The Court finds that Globe is not entitled to two-thirds of this amount because trenching, a form of excavation, is not covered under the contract.  See JPCS at 3.  It is, however, entitled to $944, the other third of the $2,788 attributable to Building 1.

//

//

c. Re-Route Electrical

The fire destroyed electrical service to Building 1. Transcript at 225:18-21. The parties stipulated at trial that much of the repair cost is excluded as excavation. Id. at 232:20-25. The remaining costs, amounting to $1,287, were for materials, namely underground piping, fittings, couplers, connectors and sand backfill. See id. at 233:3-11. These costs fall under the coverage exceptions for backfilling and underground pipes. See JPCS at 3. Therefore, Globe is not entitled to any of these costs.

d. Power from Transformer

Before the fire, Buildings 1 and 3 combined received 600 amps of electrical power. Transcript at 15:7-16, 225:22-226:3. The Court finds the evidence supporting Nationwide's theory that Building 1 and Building 3 had 300 amps combined before the fire less credible than Globe's. Because the fire destroyed electrical service to Buildings 1 and 3, Kneaper Electric installed a 600-amp pull can, a 200-amp meter and a 100-amp meter that would service both buildings. Ex. 1 at 83; Transcript at 14:20-25, 15:5-6. Kneaper's services cost $12,804. Ex. 1 at 83.

Because Kneaper replaced property that was damaged, rather than adding increased electrical power, Globe is entitled to this money under the contract. See JPCS at 2.

e. Masonry Sealer

Globe spent $116 on masonry sealer for the interior brick. Transcript at 16:13-19; Ex. 1 at 126. The masonry sealer was applied to the brick to stop the efflorescence caused by excessive moisture following the fire. Transcript at 16:20-25, 60:11-25.

The Court finds that the masonry sealer was a necessary repair cost.  See JPCS at 2, 4.  Globe is entitled to $116.

f. Demolition of Abandoned Gas and Water Lines

For $252, Johnston Construction performed demolition of gas lines that were under Building 1 and that served Building 2. Transcript at 215:20-23; Chart.  These lines were hanging from the crawl space, Transcript at 216:13-17, and were in the way of electrical work, id. at 216:17-18, 222:1-11.  Using the crawl space was the most efficient method for the electrical rewiring. Id. at 222:8-11.

The Court finds that this cost was not necessary and therefore is not covered under the contract.  Globe is not entitled to this money.

g. Repairs for Roof Ponding

A ponding problem occurred on the roof of Building 1 as a result of the new parapet wall and cricket system.  Ex. 4 at 303. Building 1's roof had only limited ponding problems before the fire because it was an essentially flat roof with a slope. Transcript at 280:19-281:6.  The parapet that had existed was damaged and destroyed by the fire.  Id. at 68:22-24. Reconstruction of a parapet wall, particularly its bracing, blocked drainage from the roof.  Transcript at 66:14-18, 67:2-6, 69:2-5, 217:2-5.  The ponding was so serious it caused water to go through skylights into Building 2.  Id. at 63:12-64:14.  The cost of these repairs was $5,965.  Chart.

The Court finds that the ponding problem was not a result of the fire.  Therefore, this cost is not covered under the contract,

**United States District Court**
For the Northern District of California

JPCS at 2, and Globe is not entitled to reimbursement for these repairs.

      h. Demolish and Remove Brick Footing

Johnston Construction demolished and removed brick footing from Building 2 and charged $1,392. Ex. 1 at 146. This footing was very close to Building 1's east wall; removing it was required to perform repairs to the 2x6 laminated firewall. Transcript at 211:10-18. Nationwide argues that the brick footing must have extended below the ground and, as a result, its removal required excavation. The Court is not persuaded.

The Court finds that Nationwide did not satisfy its burden of showing that the excavation exception applies. Thus, Globe is entitled to this $1,392.

      i. Painting Expense

In 2002, Building 1 had special interior painting with a lime peel texture and a light finish. Transcript at 212:8-12. The Court finds that special texturing existed because it finds Pete Johnston, Globe's general contractor, credible. The 2002 finish required at least one coat of primer and two finish coats, all sprayed and back rolled. Id. at 212:13-18. After the fire, the areas to be painted required much preparation, including cleaning, sanding and caulking. Id. at 370:14-18. Globe paid $57,236, the amount charged for the painting. Id. at 270:15-17, 372:19-21. Nationwide estimated that the painting should have cost $25,248. Id. at 270:18-20; Chart.

Because repainting these interior walls required the special treatment described by Globe, the Court finds that this expense

was necessary.  Globe is entitled to reimbursement for the money it paid.

j. Management Fee

Plaintiff Maxon claims a management fee in the amount of $86,690.  Transcript at 69:21-24.  Maxon's compensation as project manager for Globe was part of his normal salary as an employee of Globe, Depo. Desig., Ex. A at 18:11-14, and Globe incurred no additional costs for Maxon's work as project manager following the fire, id. at 184:4-8.

The Court finds that no management fee was "actually spent" that was "necessary to repair" the damaged property.  JPCS at 4.  Globe is not entitled to this money.

In sum, Globe is entitled to $329,038 in reimbursement for repairing Building 1.  This sum is equal to the amount claimed ($373,928) minus the agreed-upon non-covered costs ($35,497) minus the disputed costs to which Globe is not entitled ($9,393[3]).

II.  Building 2

Building 2, which was destroyed in the fire, has not yet been rebuilt.  Instead, Globe and Nationwide propose competing bids.  Nationwide hired Charles Allen, who prepared bids to reconstruct Building 2.  Allen Dec. at 2:13-15.  Allen was willing to perform any work at the prices listed in his bids.  Id. at 2:16-18.  Nationwide's numbers on the Chart are equal to Allen's bid numbers multiplied by 1.2 to account for ten percent profit and ten

---

[3] As discussed above, this number includes $1,889 paid for gas line installation, $1,287 paid for rerouting electrical, $252 paid for demolishing a gas and water line and $5,965 for repairing the roof ponding.

percent overhead.  Transcript at 152:19-24, 294:15-18.  Globe hired Les Charter to provide a cost estimate to reconstruct Building 2.  Charter Dec. ¶ 6.  The parties agreed to apply a multiplier of 1.088 to Charter's estimates so that Charter's profit and overhead percentages align with Allen's.  Transcript at 153:5-10.  The parties do not dispute that several costs amounting to $519,418 are due.  Chart.  The Court rules on the disputed costs below.

a. Architecture/Engineering

Globe's estimate is $295,509.  Ex. 9 at 285.  This number is twelve percent of the total bid.  Transcript at 156:8-11, 186:22-24.  Charter testified that twelve percent is standard in the United States.  Id. at 187:2-4.  However, this percentage does not account for the difference in work required to rebuild a destroyed building rather than to build a new building.  Id. at 157:10-13.  Allen's bid for Nationwide is $63,100.  Allen Dec. at ALLCO 230.[4]

The Court finds that Nationwide's price of $63,100 is appropriate under the contract's definition of replacement cost.  See JPCS at 3.

b. Excavation, Fill, Demolition

Globe's estimate lists a price of $27,125.  The parties agree that this estimate breaks down as follows: $2,851 for gravel excavation, $2,685 for demolition and disposal of the perimeter foundation and $21,600 for demolition and disposal of the slab and

---

[4] Allen's original bid for this item was $83,100.  However, that bid included $20,000 for geotechnical work, a cost the parties no longer dispute.  See Chart.  Charter's original bid separated geotechnical work from this cost.  Ex. 9 at 285.

footings.  Globe now agrees that it is not entitled to $2,851 for gravel excavation, so its estimate is $24,285.  Nationwide Br. at 5.  Nationwide's bid price is $17,762 for demolition of the slab alone.  Allen Dec. at ALLCO 184.[5]

The Court finds that Nationwide did not satisfy its burden to show that demolition and disposal of the perimeter foundation constitutes excavation.  Globe is entitled to the $2,685. However, the Court finds that Globe's higher price for demolition of the slab is not necessary.  See JPCS at 3.  Thus, Nationwide's price of $17,762 is appropriate.  In sum, Globe is entitled to $20,447 for this cost.

c. Utilities Hook-Up

Globe estimates that reconnecting power to Building 2 would cost $81,132.  See Ex. 9 at 285 (before 1.088 multiplier); Transcript at 295:17-23.  This estimate is based on two premises: that Building 2 originally had 400 amps of power and that Pacific Gas & Electric requires Globe to connect at a new power source that did not exist before the fire.  Globe Br. at 9; Reply Br. at 5-6.  $38,175 of this sum is related to reconnecting to a new power source.  Ex. 9 at 291.  Nationwide estimates that the utilities hook-up would cost $11,736.  Transcript at 295:9-15; Allen Dec. at ALLCO 185 (before 1.2 multiplier).  Its estimate is based on the premise that Building 2 had only 200 amps of power before the fire and that an undamaged power source is available. Transcript at 298:12-23.

_____

[5] The amount listed is $14,802.  This is before Allen's multiplier of 1.2 for profit and overhead was applied.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Regarding the amperage, the Court finds that Building 2 originally had 400 amps, meaning no portion of Globe's estimate results from amperage additions.  Id. at 229:9-10.  The Court finds Russell Whittaker, the electrician who worked on Buildings 1 and 3 after the fire, more credible than Allen on the issue of amperage.

Regarding the availability of the power source, the Court finds that Globe failed to meet its burden to prove that connecting to a new power source was "necessary" for replacement. JPCS at 3.  Because Globe is not entitled to this portion of its estimate amount, it is entitled to $42,957 for this cost.

d. Brick at Entry

Globe estimates that this cost is $4,837.  Ex. 9 at 285 (before 1.088 multiplier).  Nationwide estimates that this cost is $2,479.  Allen Dec. at ALLCO 227 (before 1.2 multiplier).

Globe did not carry its burden to prove that its higher cost is necessary, particularly in light of Allen's testimony that he would be willing to do this work at his bid price.  See JPCS at 3; Allen Dec. at 2:16-18.  Globe is entitled to $2,479 for this cost.

e. Steel Vault and Door

Globe's estimate for this cost is $25,509: $17,743 for the steel vault and $7,766 for the vault door.  Ex. 9 at 285, 296 (before 1.088 multiplier).  Nationwide's estimate is $17,208. Allen Dec. at ALLCO 210 (before 1.2 multiplier).  Nationwide's estimate is based on a door size smaller than Globe's.  Compare Ex. 9 at 296 to ALLCO 210.

Globe did not carry its burden to prove that its higher estimated cost is necessary.  See JPCS at 3.  Allen's estimate

15

United States District Court
For the Northern District of California

contained notes for measurements, explaining that he had
determined that those measurements were the maximum size possible
based on the foundation measured at the site, and on a floor plan
and photos.  Allen Dec. at ALLCO 210.  Charter, on the other hand,
got his dimensions from discussions and pictures.  He does not
recall more specifically how he calculated the dimension of the
door.  Transcript at 163:25-164:7.  Therefore, Globe is entitled
to Allen's estimate of $17,208 for this cost.

    f. Rough Lumber

    Globe estimates $588,696 for this cost.  Ex. 9 at 285 (before
1.088 multiplier).  This estimate includes substantial amounts of
old growth redwood.  See id. at 300-05.  Nationwide estimates
$163,370.  Chart.

    The Court finds that old growth redwood is not necessary to
replace Building 2 with a building of equivalent utility, using
modern materials and current standards, design and layout.  See
Depo. Desig., Ex. A at 114:2-8 ("my consultants say that the cost
to do that out of wood and comparable materials and for a modern
day structure, it can't be done.  So we're using a steel and the
componentry there to deliver the same sense of quality, the
esthetics, sound deadening, all those things, we can achieve with
a steel structure much more economically.").  Therefore, Globe is
entitled to Allen's bid of $163,370 for rough lumber.

    g. Redwood Floor Under Concrete Slab

    Globe estimates that it needs $62,872 for this cost.  Ex. 9
at 285 (before 1.088 multiplier).

    The Court finds that Globe did not carry its burden to prove
that there was a redwood floor under the concrete slab that

**United States District Court**
For the Northern District of California

warrants replacement.  See JPCS at 3.  Globe is entitled to no money for this cost.

        h. 1x8 Redwood Shiplap Siding

    Globe estimates it needs $49,903 for 1x8 redwood shiplap siding on three exterior walls.  Ex. 9 at 285 (before 1.088 multiplier).  Before the fire, there had been exposed redwood shiplap on the north side of the building, Transcript at 84:22-85:1, and redwood shiplap siding underneath a stucco exterior on the south and west walls, id. at 85:2-4.  Globe's bid includes all three walls and was priced at $8.88 per square foot.  Ex. 9 at 285 (before 1.088 multiplier).  Nationwide's bid is for $9,939, based on a $5.93 per square foot rate, and includes redwood shiplap only for the north wall.  Allen Dec. at ALLCO 226 (before 1.2 multiplier).

    The Court finds that unexposed redwood is not included within the measure of replacement cost under the contract.  See JPCS at 4.  Further, Globe did not carry its burden to prove that its higher price per square foot was necessary or of comparable quality to the pre-fire exposed redwood shiplap.  Therefore, Globe is entitled only to Nationwide's bid of $9,939.

        i. Main Stairway North End

    Globe estimates that it would take $24,178 to reconstruct this stairway.  Ex. 9 at 285 (before 1.088 multiplier).  Charter based that estimate on eyewitness accounts of the size and finishes.  Transcript at 172:24-173:2.  Nationwide's bid is $18,120.  Allen Dec. at ALLCO 191-92 (before 1.2 multiplier).

Globe failed to carry its burden to prove that its higher cost is necessary for replacement.  Globe is entitled only to $18,120 for the stairway.

j. Open Web Pitched Trusses

Globe estimates that it will need $25,629 for open web pitched trusses.  Ex. 9 at 285 (before 1.088 multiplier). Nationwide estimated that they would cost $21,188.  Chart; Nationwide Br. at 16.  Nationwide points to no evidence in the record that explains its amount.

Globe is entitled to the full amount of its estimate of $25,629.

k. Rough Hardware

Globe estimates that it will need $17,660 for rough hardware. Ex. 9 at 285 (before 1.088 multiplier).  Charter typically uses a five percent measure but, where materials are more expensive, he lowers that number to three percent, which is what he did here. Transcript at 173:21-174:3.  Nationwide estimates that it would cost $10,565.  Chart; Nationwide Br. at 17.  Nationwide points to no evidence in the record that explains its amount.

Globe is entitled to the full amount of its estimate of $17,660.

l. Doors and Frames

Globe estimates $50,909 for doors and frames.  Ex. 9 at 285 (before 1.088 multiplier).  Charter's bid is based on prior projects he had worked on.  Transcript at 176:12-18.  He estimates that installing the doors would take eight hours per door, at forty dollars per hour.  Id. at 177:17-178:7.  For Nationwide, Allen estimates $19,238 for the doors and frames.  Chart.  Allen's

United States District Court
For the Northern District of California

1 estimate is based on pre-hung, less expensive doors that, he
2 estimates, take three hours to install.  Transcript at 333:7-20;
3 Allen Dec. at 10:22-26.

4    Globe failed to carry its burden to prove that its higher
5 cost is necessary for replacement.  Globe is entitled to
6 Nationwide's estimate of $19,238.

7       m. Windows Custom Redwood

8    Globe's estimate for this cost is $70,358.  Ex. 9 at 286
9 (before 1.088 multiplier).  Charter received this price from a
10 subcontractor who would replicate the window frames in
11 photographs.  Nationwide's estimate is $40,615.  Chart.  Allen's
12 bid also relies on the photographs.  Transcript at 334:21-24.
13 Allen's testimony is credible because he was willing to perform
14 the work for his bid price.  See Allen Dec. at 2:16-18

15    Globe failed to carry its burden to prove that its higher
16 cost is necessary for replacement.  Globe is entitled only to
17 Nationwide's estimate of $40,615.

18       n. Skylights

19    Globe's estimate for this cost is $3,869.  Ex. 9 at 286
20 (before 1.088 multiplier).  Nationwide's is $1,968.  Allen Dec. at
21 ALLCO 228 (before 1.2 multiplier).

22    Globe failed to carry its burden to prove that its higher
23 cost is necessary for replacement.  Globe is entitled to
24 Nationwide's estimate of $1,968.

25       o. Lath and Plaster

26    Globe's estimate for this cost is $191,488.  Ex. 9 at 286
27 (before 1.088 multiplier).  This estimate is based on the premise
28 that 19,800 square feet require lath and plaster, id., at a price

19

United States District Court
For the Northern District of California

of slightly more than $9.67 per square foot after the 1.088 multiplier. Nationwide's estimate is $86,016, which includes $65,520 for 12,847 square feet of lath and plaster, Chart, and $20,496 for 8,867 square feet of sheetrock and texturing, Nationwide Br. at 19 & n.5. This amounts to slightly more than $5.10 per square foot after the 1.2 multiplier. The Court finds that 19,800 square feet of lath and plaster is required; Nationwide presented no evidence at trial explaining why sheetrock would suffice to replace lath and plaster in certain areas under the replacement cost measure.

Globe failed to carry its burden to prove that its higher cost per square foot of lath and plaster is necessary for replacement purposes. Globe is entitled to Nationwide's post-multiplier pricing for 19,800 square feet, which totals $100,980.

p. Sport Flooring

Globe estimates that replacing a sprung dance floor will cost $86,188. Ex. 9 at 286 (before 1.088 multiplier). The sprung dance floor covered 3,516 square feet of Building 2's second floor. Ex. 9 at 313. The price per square foot is $24.513 after the 1.088 multiplier. Nationwide's estimate is $18,748 for sport flooring for the 934 square feet more recently used as a martial arts studio. Chart; Docket No. 82-1.

Following a fire in 1976, the sprung dance floor was covered in plywood. Transcript at 138:7-9. Immediately before the 2006 fire, Building 2's second floor had been used as a martial arts studio. Id. at 41:14-21. There was a partition between the action mat and the seating area, which was carpeted. Id. at 42:6-16. On the other side of the martial arts studio was a storage

area.  Id. at 42:17-25, 116:3-6.  That wall had been there for at least fifteen years.  Id. at 43:1-7.  See also Ex. 56 at 7.

Globe failed to meet its burden to prove that all the square footage of sprung dance floor is required to use it for the same purpose as before the fire.  See JPCS at 3.  Globe is entitled to 934 square feet of sprung dance floor, Chart, at Globe's square footage cost, or $22,895.

q. Resilient Floor

Globe's estimate for this cost is $5,241.  Ex. 9 at 286 (before 1.088 multiplier).  Nationwide's is $3,535.

Because Nationwide presented no evidence at trial supporting its calculation, the Court finds that Globe is entitled to its estimate of $5,241.

r. Fiber Reinforced Plastic Panels

Globe estimates that $7,031 will be required to replace 1,454 square feet of Fiber Reinforced Plastic (FRP) panels that existed in the butcher area in Building 2.  Ex. 9 at 286 (before 1.088 multiplier).  Nationwide estimates that $3,365 will be required to replace 1,304 square feet of FRP.  Allen Dec. at ALLCO 205, 212, 214, 218, 219 (before 1.2 multiplier).

Globe failed to carry its burden to prove that its higher cost is necessary for replacement.  Globe is entitled to Nationwide's price of $3,365.

s. Plumbing, Sinks, Floor Drain, French Drain, Restrooms

Globe's estimate is $84,622.  Ex. 9 at 286 (before 1.088 multiplier), 323.  Nationwide's estimate is $74,186, including $7,920 for underground sewer piping, which Nationwide argues is not covered.  Nationwide Br. at 21.

The Court finds that Globe is entitled to the full amount of its estimate: $84,622.  Nationwide has not presented evidence that undercuts the necessity of any of the line items in Globe's estimate.

t. Electrical

Globe's revised estimate is lower than the one in its original estimation chart.  Globe's price of nine dollars per square foot remains the same, <u>see</u> Ex. 9 at 324, but it revises its square footage to 9,700 square feet.  The Court finds that Globe's estimate, based on this information, is $94,982.  Nationwide's estimate is $63,283.  Chart; Allen Dec.

The Court finds that Globe is entitled to its revised estimate of $94,982.  It is not persuaded otherwise by Allen's general testimony regarding building types.

u. Site Fencing

Globe estimates that it needs $9,450 for temporary site fencing.  Ex. 6 at 21-22.  Fencing is costing Globe $150 per month.  <u>See id.</u>  Nationwide's bid lists security fencing for the first eight months of work, but lists no price.  Allen Dec. at ALLCO 184.

The Court finds that Globe is entitled to eight months of fencing at $150 per month, or $1,200.  Globe has not shown that fencing in excess of eight months is necessary to replace the building.

v. Builder's Risk Insurance

Nationwide's numbers, based on Allen's bids, include ten percent for overhead.  This overhead amount includes insurance.  Transcript at 344:11-16.  Because Globe applied a multiplier to

United States District Court
For the Northern District of California

22

United States District Court
For the Northern District of California

Charter's estimates to match Nationwide's estimates, the Court finds that the multipliers added and used throughout trial include this form of insurance.  For this reason, Globe is not entitled to any additional money.

w. General Liability Insurance

The Court finds that the multipliers used by the parties to align their estimates for overhead and profit purposes include this form of insurance.  See Transcript at 344:11-16.  For this reason, Globe is not entitled to any additional money.

x. Meat Lockers and Freezers

There is no mention of meat lockers and freezers in any of the direct testimony submitted to the Court or in any of the pre-trial papers, such as the disputed items chart submitted before trial.  Nor is there an entry for them in Charter's bid.  See Ex. 9.  Because Globe did not raise this issue in its direct case, the Court finds that it may not do so now.  Globe is not entitled to any money for this item.

y. Depreciation Holdback

The parties agree that Globe will be entitled to a depreciation holdback of $92,035 once the building is completed.

In sum, based on the Court's resolution of each of the disputed items, Globe is entitled to $1,275,433 for Building 2. This sum does not include the holdback that is not yet owed.

III. Building 3

a. Roof

Globe paid $13,966 to Darin Thomsen Construction for re-roofing Building 3.  Ex. 2 at 160.  Because the Court finds

23

Thomsen to be credible, it also finds that roof replacement was necessary.  Globe is entitled to the full amount it paid.

### b. Gas Line Installation

This cost is the other half of the gas line installation cost associated with both Building 1 and Building 3.  As the Court found for Building 1, two-thirds of this amount is not owed because trenching is not covered under the contract.  See JPCS at 3.  Globe is, however, entitled to $944, the other third.

### c. Project Management

As with Building 1, the Court finds that no management fee was "actually spent" that was "necessary to repair" the damaged property.  JPCS at 4.  Globe is not entitled to this money.

In sum, Globe is entitled to $14,910 for Building 3 based on the Court's findings concerning the parties' disputed costs.

## IV.   Pre-judgment Interest

The Court concludes that damages for a breach of an obligation to pay money "is deemed to be the amount due by the terms of the obligation, with interest thereon."  Cal. Civ. Code § 3302; see also id. § 3287(a).  The time for interest begins to run when the defendant knew the amount owed or could have computed it from reasonably available information.  Chesapeake Indus., Inc. v. Togova Enters., Inc., 149 Cal. App. 3d 901, 907.  Where an insurer contests its obligation to pay or the amount it owes, interest is calculated from the date the insurer was obliged to pay under its policy.  See Oil Base, Inc. v. Transp. Indem. Co., 148 Cal. App. 2d 490, 492 (1957).

The Court finds that Globe is entitled to pre-judgment interest of ten percent per annum on the unpaid amounts for

United States District Court
For the Northern District of California

Buildings 1 and 3 from December 10, 2007 and on the unpaid amounts for Building 2 from January 31, 2013.  Cal. Civ. Code § 3289(b).

CONCLUSION

Globe is entitled to $329,038 for the disputed costs attributable to Building 1, plus prejudgment interest of ten percent per annum from December 10, 2007.  Globe is entitled to $1,275,433 for Building 2, which includes the costs listed in the Chart as undisputed, plus prejudgment interest of ten percent per annum from January 31, 2013 on the amount Nationwide has not yet paid.  It does not include the depreciation holdback of $92,035 to which the parties agree Globe will be entitled once the building is completed.  Globe is entitled to $14,910 for Building 3, plus prejudgment interest of ten percent per annum from December 10, 2007.

Within fourteen days of this order, the parties shall submit a joint proposed judgment that clearly states in dollar amounts how much money Nationwide owes Globe, by building, based on the findings in this order.  The dates and rates of interest should be stated.  The judgment should also account for the $92,035 holdback amount owed.  If the parties cannot agree, they must submit separate proposed judgments with an explanation of the differences.

IT IS SO ORDERED.

Dated: August 4, 2016

_____
CLAUDIA WILKEN
United States District Judge